**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

MAY 02 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MAURICIO ARNOLDO RAMIREZ AYALA, <br><br> Petitioner, <br><br> v. <br><br> ERIC H. HOLDER, Jr., Attorney General, <br><br> Respondent. | No. 08-73764 <br><br> Agency No. A039-259-147 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 7, 2010
Pasadena, California

Before: NOONAN, BERZON, and CALLAHAN, Circuit Judges.

The petitioner in argument before us waived the issue we now address. In

response to our order for supplemental briefing as to whether we are bound by this

waiver, the government concedes that we have discretion to address the issue, but

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

urges us not to do so.  *See Aleman v. Glickman*, 217 F.3d 1191, 1196 (9th Cir. 2000); *In re America West Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000).

In his original hearing before the IJ, the petitioner developed evidence that he had a diminished mental capacity and that this made him more likely to be tortured.  The IJ granted CAT relief in part because his diminished mental capacity made it "more likely than not that he would be tortured in the prison systems or in the country of El Salvador if returned there."  The Department of Homeland Security appealed, and the BIA concluded that the IJ had erred by considering the aggregate of three factors: "1) the respondent faced trouble surviving without better language or social skills and without family support; 2) the respondent faced harm from street gangs; and 3) the respondent may be arrested because of his gang-related tattoos or harmed by government-sponsored vigilantes."  The BIA remanded to the IJ, stating that petitioner could qualify for CAT protection only on the basis of the IJ's third consideration (or the second consideration if the petitioner could make the necessary showings to a governmental connection).

On remand, the IJ held another hearing, at which petitioner presented additional background documents and expert testimony focused on his gang-related tattoos.  After considering this additional evidence, the IJ denied petitioner's application for deferral of removal under CAT, noting that the BIA

"stated that the only factor relevant to the CAT analysis is [petitioner's] possible arrest and torture as a result of his gang-related tattoos." The IJ specifically "decline[d] to entertain arguments that his diminished mental capacity . . . should be considered." The BIA dismissed petitioner's appeal without addressing whether his diminished mental capacity made him more likely to be tortured. The government concedes that the petitioner has exhausted this issue.

The question of whether the diminished mental capacity of a petitioner is relevant to a CAT claim is new and important. The BIA's first decision, speaking only of petitioner's language difficulties and minimal social skills, did not clearly focus on the question whether the petitioner's diminished mental capacity made him more likely to be tortured. The likelihood of such abuse is to be measured not only by information about the torturers but by the vulnerability of their victim. It is a sad truth of human experience that a victim's haplessness enhances the confidence of a bully.

Expert testimony from a psychologist indicated that the petitioner "has been delayed in motor development and also delayed in speaking ability as well. The [petitioner] cannot learn basic skills such as caring for his own hygiene . . . .[He] will be unable to be self reliant for basic health needs." Expert testimony also indicated that the petitioner would be arrested because his appearance would

identify him as a gang member, and that, due to his developmental delays, petitioner would be unable to respond appropriately to police questioning. If these reports are accurate, Ayala's condition may well be relevant in weighing the likelihood of his being tortured by the police, or by government-linked death squads or gang members whose actions are acquiesced to by the government.

Accordingly, we REMAND to the BIA for reconsideration in accordance with this decision.

**Ayala v. Holder, No. 08-73764**

CALLAHAN, CIRCUIT JUDGE, dissenting:

I dissent from the majority's decision to remand for reconsideration of the petitioner's mental capacity. The petitioner did not raise mental capacity in his opening brief and, when asked at oral argument whether he was raising this issue, his attorney explicitly stated that he did not seek review of the petitioner's mental capacity. There is no evidence that the Petitioner's decision to waive the mental capacity issue was anything other than a tactical decision. This court has previously declined to exercise its discretion to consider waived issues in similar circumstances. *See, e.g.*, *In re Burnett*, 435 F.3d 971, 975-77 (9th Cir. 2006) (declining to consider waived issue where the litigants had not raised the issues below and there were no extraordinary circumstances that would justify the court's discretionary power to consider the issues); *A-1 Ambulance Serv. Inc., v. County of Monterey*, 90 F.3d 333, 339 (9th Cir. 1996) (declining to apply the court's discretion to consider an issue raised for the first time on appeal where it was not adequately and timely raised below).

Although the panel majority concludes that evidence of diminished mental capacity is "new and important" and remands for further consideration of the petitioner's mental capacity, the BIA must decide what weight, if any, to give to the evidence cited by the majority. Under our substantial evidence standard, it is

not for us to independently weigh the evidence.  *See Donchev v. Mukasey*, 553 F.3d 1206, 1213 (9th Cir. 2009) ("We are not free to look anew at the testimony and then measure the soundness of the agency's decision by what we would have found."); *Kotasz v. I.N.S.*, 31 F.3d 847, 851 (9th Cir. 1994) ("This strict standard bars the reviewing court from independently weighing the evidence and holding that the petitioner is eligible for asylum, except in cases where compelling evidence is shown.").

Because we should not have exercised our discretion to consider an issue that the petitioner waived, and because I disagree with the panel majority's focus on certain expert testimony in its disposition remanding to the BIA, I dissent.